■ In the Matter of RICHARD WALLACE et al., Appellants, v. ROCKE-FELLER CONSTRUCTION CENTER, INC., et al., Respondents, and SPECIAL DISABILITY FUND, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent. — Appeals from a decision of the Workmen's Compensation Board, filed July 29, 1970, which disallowed the claim, and from a decision of the Workmen's Compensation Board, filed November 16, 1972, which denied an application for reconsideration or rehearing. These claims, one for a bilateral hernia and the other for death benefits, were filed by Richard Wallace on behalf of his dependent brothers. The decedent, also named Richard Wallace, had been employed by Rockefeller Center for over 20 years as a porter on the midnight shift. His duties consisted of mopping and waxing the hallways and elevators, and polishing the brasswork on the elevators. In performing these duties he used a pail filled with water, which was mounted on wheels, and an electric buffing machine. On January 9, 1967, decedent did not eat his lunch and used his lunch period to lie down. On January 10, he asked his son to come home because he felt sick. His son testified that his father was breathing noisily and complained of chest pains. The decedent was found dead in his apartment on January 14, 1967. The death certificate indicated he died on that day, and the cause was occlusive coronary artery sclerosis. The undertaker disputed this stating decedent had been dead at least two days. Decedent had been treated by Dr. Rosen since June, 1955. He apparently had been suffering from hypertension and arteriosclerotic heart disease complicated by chronic bronchitis and emphysema, and had been receiving cardiac medication for some time prior to his death. On January 2, 1967, Dr. Rosen found decedent's blood pressure to be 190/112 which he characterized as failure and advised him not to work, but decedent refused. He also stated that this was worse than on his examination on December 26, 1966 when his blood pressure was 200/100, and that decedent's condition had become

progressively worse from January, 1966. There was the usual conflict of medical opinion. There was also conflicting evidence regarding the strenuousness of the work. The referee found the hernias to be compensable injuries, but disallowed the death claim on the ground that decedent's work efforts were not sufficiently arduous to entail "greater exertion than the ordinary wear and tear of life." The board determined "the decedent did not sustain an accident arising out of and in the course of his employment" and "that the death was due to decedent's pre-existing cardiac pathology and was not causally related to his employment" and affirmed the referee's decision. Appellants contend that there is no substantial evidence to support the determination of the board, and that the proper test for causal relationship had not been applied and that the proper test was whether the physical effort of the work was too strenuous for the man. While the referee predicated his determination on the test of "greater exertion than the ordinary wear and tear of life test," the board did not. The board noted that decedent's work efforts did not involve excessive strain or unusual exertion, and that any work activity was strenuous for him. The board then proceeded to determine that his death was caused by his pre-existing cardiac pathology and not causally related to his employment. On the medical evidence in the record, the board could properly find that death was caused by the existing heart condition which had been progressively getting worse and not as a result of any condition of employment. There being substantial evidence to support a finding of no accidental injury, the decision of the board must be affirmed. (*Matter of Duca* v. *Campus Pizza*, 42 A D 2d 641; *Matter of Strauss* v. *Morning Freiheit*, 39 A D 2d 786, affd. 35 N Y 2d 780.) Decisions affirmed, without costs. Herlihy, P. J., Staley, Jr., Cooke, Sweeney and Reynolds, JJ., concur.